IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**SHARON GAGNE-SMITH,**                    )
                Plaintiff,                    )
v.                                         )
                                             )     Civil Action No. _____

**EMPIRE HYUNDAI, INC.,**                  )
428 Pleasant Street, Fall River MA 02721   )
                                           )
Serve:  Paul Marshall Harris, Registered Agent )
             Murtha Collina                )
             99 High Street                )
             Boston, MA  02110             )
                                           )
and                                        )
                                           )     **COMPLAINT**
**RESOURCE AUTOMOTIVE, INC.**              )
**d/b/a FIRST EXTENDED SERVICE CORP.**     )     Jury Trial Demanded
P. O. Box 804785, Chicago, IL 60680        )
Serve:  Illinois Corporation Service       )
            801 Adlai Stevenson Drive     )
            Springfield, IL  62703        )
                                           )
and                                        )
                                           )
**HYUNDAI CAPITAL AMERICA, INC.**          )
**f/k/a HYUNDAI MOTOR FINANCE CO.**        )
10550 Talbert Avenue                       )
Fountain Valley, CA                        )
        Serve:  National Registered Agents, Inc. )
            303 Congress Street, 2nd floor )
            Boston, MA 02110              )
                                           )
        Defendants                     )

## INTRODUCTION

1.      This action seeks damages for unlawful and deceptive practices in the sale and

financing of a car.  The dealer, Empire Hyundai, Inc.,  agreed to sell and did sell the plaintiff a

used Ford Taurus.  Then, claiming that it could not obtain financing for her,  the dealer refused to

honor its contract for the Taurus, but also refused to cancel the transaction by refunding the

plaintiff's down payment and trade-in vehicle.  Instead, the dealer pressured her into agreeing to

purchase a new Hyundai Accent at a higher price with higher monthly payments.  The plaintiff's

daughter agreed to cosign for the purchase; but the dealer wrote up the transaction showing the

daughter as the buyer and the mother the cosigner, creating difficulties for both the mother and

the daughter.  No one ever gave notice to the plaintiff that her requests for credit, either to

purchase the Taurus or to purchase the Accent,  had been denied, as required by the Equal Credit

Opportunity Act (ECOA),  15 U.S.C. §1691 et seq., and the Fair Credit Reporting Act (FCRA),

15 U.S.C.  §1681 et seq.

The dealer also made misrepresentations to induce the plaintiff to buy an extended service

contract for $1500.  When the plaintiff learned that this product substantially duplicated her

existing manufacturer's warranty coverage, she attempted to invoke her right to cancel it and get

most of the price refunded.  The administrator of the service contract, First Extended Service

Corporation (hereinafter "First Extended"),  in violation of the language of its policy, refused to

recognize her right to cancel unless the request came from the dealer;  the dealer refused to

recognize her right to cancel unless the request came from the daughter, who it insists is the

Accent's owner.

Plaintiff seeks compensatory, statutory, and punitive damages against the dealer under the

ECOA, FCRA,  and the Massachusetts Consumer Protection Act, M.G.L. c. 93A, and on

common-law claims of conversion and breach of contract for these illegal, unfair, and deceptive

practices.  Plaintiff also seeks damages for breach of contract and under the Consumer Protection

Act, M.G.L. c. 93A, against First Extended.  Finally, plaintiff seeks relief from the lender,

invoking the contractual language which makes the holder of a consumer credit contract subject

to all claims and defenses which the buyer has against the seller of the goods, up to the limit of the value of the contract.

## JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction over the First and Second Causes of Action under 28 U.S.C. §§1331 and 15 U.S.C. §1691e(f), and over the Third and Fourth Causes of Action under 28 U.S.C. §§1331 and 15 U.S.C. §1681p.   The court has jurisdiction over the remaining counts under 28 U.S.C. §1367.  Venue in this district is proper because all of the events complained of took place in this district.

## PARTIES

3.      Plaintiff, SHARON GAGNE-SMITH,  is a natural person, who resides in Fall River, Massachusetts.

4.      Defendant EMPIRE HYUNDAI, INC.,  ("Empire Hyundai" or "Empire") is a Massachusetts corporation with a principal place of business at 428 Pleasant Street, Fall River, Massachusetts  02721.   Defendant is in the business of selling New Hyundai motor vehicles as well as used vehicles of various makes.  Its registered agent is Paul Marshall Harris and its registered office is at 99 High Street, Boston, Massachusetts 02110.

5.      Defendant HYUNDAI CAPITAL AMERICA, INC. (HCAI),  which until May 26, 2009, was known as HYUNDAI MOTOR FINANCE COMPANY, is a California corporation registered to do business and regularly doing business in Massachusetts.  Its principal place of business is at 3161 Michelson Drive, Suite 1900, Irvine, CA 92612-4418.   Most references in this complaint are to Hyundai Motor Finance Co. (HMFC) as the name appears in all paperwork related to the transaction.

6.      RESOURCE AUTOMOTIVE, INC., a subsidiary of The Warranty Group,  is an

umbrella for several sellers of automotive warranties sold through dealers.  It includes FIRST EXTENDED SERVICE CORP. ("FIRST EXTENDED"), a now dissolved corporation in whose name an extended service contract was issued to the plaintiff.  RESOURCE AUTOMOTIVE, INC. is an Illinois corporation with principal place of business in Chicago, Illinois.

## FACTS COMMON TO ALL CAUSES OF ACTION

7.      Empire Hyundai regularly advertises in print and broadcast media, "100% Credit Approval!  Divorce - Bankruptcy - Repo - Bad Credit - No Problem – You Are Approved."

8.      On or about September 27, 2008, plaintiff entered Empire's place of business and expressed interest in buying a car.

9.      Plaintiff's income was limited to disability and welfare benefits for herself and her grandchildren, and she believed that she had a low credit rating.

10.     Because of Empire's advertising, plaintiff believed Empire would provide or arrange for financing that would enable her to buy a car.

11.     The intended purchase was for plaintiff's personal, family, or household use.

12.     Empire's employees directed the plaintiff to a  2007 Ford Taurus, stock #HP5723, VIN 1FAFP53U87A142589 ("the Taurus")  and told her she would be able to purchase this car and that payments would be about $200 per month.

13.      On or about September 27, 2008, the plaintiff submitted an application for credit, permitting Empire to access her credit report from one or more credit reporting agencies.

14.     On September 27, 2008, the plaintiff signed documents for the Taurus, including a Motor Vehicle Purchase Agreement (MVPA) showing the base price of the car to be $18,995, and the amount to be financed as $12,845, and a Retail Installment Sale Agreement (RISA).   The MVPA and RISA were also signed by an approved authorized dealer representative.

15.     Also on September 27, 2009, plaintiff put down a $200 cash down payment and transferred title to her existing vehicle, a 1991 Ford Explorer.

16.     Empire gave her a trade-in allowance of at least $5,000 for the Explorer.

17.     On September 27, 2008, Empire took possession of plaintiff's Explorer, gave plaintiff the keys to the Taurus, switched her registration plates from the Explorer to the Taurus, and allowed her to drive away in the Taurus.

18.     In so doing, Empire effectively granted  her credit.

19.     The RISA which the plaintiff signed for the Taurus was final and binding on both parties once they had signed it on September 27, 2008.

20.     From September 27 to October 1, 2008, Empire did not contact the Registry of Motor Vehicles and did not contact plaintiff's insurance agency to transfer her registration and insurance coverage from the Explorer to the Taurus.

21.     On or about September 29, 2009, plaintiff expressed concern about this to Empire and asked to cancel the sale.

22.     Empire told plaintiff she could not cancel the sale because her trade-in vehicle had been sold.

23.     From September 27 to October 1, 2008,  Empire did not submit the plaintiff's credit application to any lender.

24.     In the alternative, Empire submitted the plaintiff's credit application to one or more lenders who declined to accept assignment of the RISA between Empire and the plaintiff.

25.     The decision by Empire not to finance the plaintiff's purchase of the Taurus was based at least in part on information obtained from a credit report.

26.     The decision, by lenders to which Empire submitted the plaintiff's credit

application, not to accept assignment of the RISA was based at least in part on information obtained from a credit report.

27.     On or about October 1, 2008, employees of Empire left a message for plaintiff and spoke to her by telephone, telling her she must come back to the dealership.

28.     When plaintiff got there, Empire told her that she did not qualify for financing for the Taurus and would have to return it.

29.     Upon being told this by Empire's employees, the plaintiff believed that Empire had the right to cancel the sale.

30.     She complied with Empire's request to remove her personal property from the Taurus and give back the keys.

31.     Empire also asked for the return of, or attempted to confiscate, all paperwork in plaintiff's possession evidencing the transaction for the Taurus.

32.     One of Empire's employees scoffed at the plaintiff, saying in more or less these words, "You didn't really think you would be able to keep that car, did you?"

33.      Seeking once more to be put back in the position she had been before committing to buy the Taurus, the plaintiff asked for the cash value which she was told had been allowed for her Explorer, namely $5,000.

34.     Empire refused to refund $5000 or any sum of money for the plaintiff's trade, or the Explorer itself, or her cash down payment.

35.     The effect of these actions was to leave the plaintiff and her young grandchildren stranded at the dealership with no vehicle.

36.     Empire then told plaintiff that she could qualify to buy a new Hyundai Accent, but that she would have to have her daughter Nicole cosign and pay a larger cash down payment.

37.     Plaintiff agreed to do this and arranged to return to the dealership the next day with Nicole and the additional money.

38.     Empire allowed and indeed encouraged the plaintiff to drive the new Accent home.

39.     On October 2 the plaintiff and daughter Nicole arrived at Empire.

40.     Plaintiff paid an additional $300 in cash.

41.     Empire wrote up a MVPA showing Sharon Gagne-Smith to be the primary purchaser of the Accent, with Nicole the co-purchaser and cosigner.

42.     Over the course of a session lasting between one and two hours, Empire successively wrote up and discarded several sets of paperwork.

43.     The final RISA calls for 72 monthly payments of $319.22, totaling $22,983.84. The Total Sale Price of the car, including cash down payment and trade-in allowance,  is $28,783.84.

44.     The final MVPA and RISA show Nicole as the primary purchaser and Gagne-Smith as the cosigner.  The RISA shows the address of the car to be Nicole's address in Braintree.

45.     Nicole objected to the form of these documents, saying she did not want to be listed as the owner of the car.  Empire assured her that it was just a formality.

46.     Subsequently, Empire reported to the plaintiff's insurance company that the car would be garaged in Braintree, which would have increased the plaintiff's  insurance premiums.

47.     The final paperwork presented to the plaintiff and her daughter included an item of $1500 for an extended service contract for the Accent.

48.     Empire told the plaintiff that she was going to receive extended warranty protection, including towing and substitute transportation in the event of a breakdown, but not that she was being billed $1500 for this item.

49.     The "extended" service contract, administered by First Extended,  runs concurrently

with Hyundai's manufacturer's warranties,  which include a ten-year/ 100,000-mile  powertrain

warranty, a five-year/ 60,000-mile warranty for almost all other components, and five years of

roadside assistance, including towing.

50.     Substitute transportation is available at nominal cost as a rider to Massachusetts car

insurance policies where the insured has coverage for collision and other casualty losses.

51.     Plaintiff, Sharon Gagne-Smith, signed the extended service agreement in the space

labeled "customer's signature."

52.     Empire assigned the RISA for the Accent to Hyundai Motor Finance Company

(HMFC), now Hyundai Capital America, Inc.

53.     The RISA which was assigned to HMFC contains the following clause:  "Notice:

Any holder of this consumer credit contract is subject to all claims and defenses which the debtor

could assert against the seller of goods or services obtained pursuant hereto or with the proceeds

hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor

hereunder."

54.     At no time did Empire give the plaintiff notice of an adverse action taken on her

credit application.

55.     At no time did HMFC give the plaintiff notice of an adverse action taken on her

credit application.

56.     At no time did any other lender give the plaintiff notice of an adverse action taken

on her credit application.

57.     The extended service contract contains a cancellation clause, which provides in

pertinent part as follows:  "In the event . . . you elect to give notice of cancellation this extended

service agreement shall terminate.  In such event you or the lienholder  . . .  must submit

immediately to the Selling Dealer in writing the following:  the extended service agreement number, vehicle identification number, mileage, make and model of the vehicle."

58.     On March 31,  2009, the plaintiff sent written notice of cancellation to First Extended.  First Extended received the notice on April 3.

59.     Also on March 31, 2009, by means of a copy of the cancellation letter, the plaintiff informed Empire, the Selling Dealer, in writing, of the extended service agreement number, vehicle identification number, mileage, make and model of the vehicle.

60.     As of the date of her notice of cancellation, the plaintiff was entitled to a refund, pursuant to the formula contained in the contract, of $1,375.  She asked that the refund be sent to the lien holder and credited to her outstanding balance.

61.     First Extended refused to cancel the contract.  When contacted by telephone two months later, it told the plaintiff that her cancellation was not effective unless it came from the dealer.

62.     The plaintiff called Empire and asked Empire to direct First Extended to cancel the contract.

63.     Empire told the plaintiff it would not honor her request unless it came from Nicole because Nicole was the owner of the car.

64.     Every month's delay in canceling the service contract reduces the allowable refund.

65.     All acts of Empire Hyundai described herein were undertaken  by its employees acting in the course of their employment.

66.     The car payment represents more than a quarter of the plaintiff's monthly income. Plaintiff struggles to make the payments, and fears that over the course of the six-year loan she will be unable to make the payments and will lose the car.

67.     As a result of the acts of the defendants, plaintiff has suffered damages including financial hardship, loss of time, humiliation, anxiety, emotional distress, and rupture of her relationship with her daughter Nicole.

## FIRST CAUSE OF ACTION: EQUAL CREDIT OPPORTUNITY ACT (ECOA)
## (CLAIM AGAINST EMPIRE HYUNDAI, INC.)

68.     Empire Hyundai in the ordinary course of its business regularly participates in credit decisions, including setting the terms of the credit that will be offered to consumers.

69.     Empire's rejection of plaintiff's application for credit to buy the Taurus constituted adverse action for purposes of the ECOA,  15 U.S.C. §1691(d)(6).

70.     Empire violated the ECOA by failing to provide a notice of adverse action, 15 U.S.C. §1691(d)(2).

71.     The rejection of plaintiff's application for credit to buy the Accent and the substitution of Nicole as primary purchaser constituted adverse action for purposes of the ECOA 15 U.S.C. §1691(d)(6).

72.     Empire violated the ECOA by failing to provide plaintiff a notice of adverse action, 15 U.S.C. §1691(d)(2).

**WHEREFORE**, plaintiff requests that this court enter judgment for her against Empire Hyundai, Inc., for the following relief:

a.     Actual damages pursuant to 15 U.S.C. §1691e(a);

b.     Punitive damages not to exceed $10,000 pursuant to 15 U.S.C. §1691e(b);

c.     Attorney's fees, litigation expenses and costs, pursuant to 15 U.S.C. §1691e(d);

d.     Such other or further relief as the court deems appropriate.

## SECOND CAUSE OF ACTION:  EQUAL CREDIT OPPORTUNITY ACT
## (CLAIM AGAINST HONDA CAPITAL AMERICA)

73.     HMFC (HCAI) in the ordinary course of its business regularly participates in credit decisions, including setting the terms of the credit that it will offer to consumers          .

74.     The rejection of plaintiff's application for credit to buy the Accent and the substitution of Nicole as primary purchaser constituted adverse action for purposes of the ECOA, 15 U.S.C. §1691(d)(6).

75.     HMFC (HCAI)  violated the ECOA by failing to provide plaintiff a notice of adverse action, 15 U.S.C. §1691(d)(2)

**WHEREFORE**, plaintiff requests that this court enter judgment for her against Hyundai Capital America, Inc., for the following relief:

a.      Actual damages pursuant to 15 U.S.C. §1691e(a);

b.      Punitive damages not to exceed $10,000 pursuant to 15 U.S.C. §1691e(b);

c.      Attorney's fees, litigation expenses and costs, pursuant to 15 U.S.C. §1691e(d);

d.      Such other or further relief as the court deems appropriate.

### THIRD CAUSE OF ACTION:  FAIR CREDIT REPORTING ACT (CLAIM AGAINST  EMPIRE HYUNDAI)

76.     Defendant Empire Hyundai, Inc., at all relevant times was a  user of credit reports within the meaning of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.

77.     Empire Hyundai took adverse action, as defined at 15 U.S.C. §1681a(k), in connection with the plaintiff's credit application, based in whole or in part on information contained in a consumer credit report.

78.     Empire Hyundai Failed to give notice to plaintiff as required by 15 U.S.C. §1681m(a).

79.     Empire Hyundai obtained information from a source other than a credit reporting

agency that resulted in an adverse determination on the plaintiff's application for consumer credit.

80.     Empire Hyundai failed to give notice to plaintiff as required by 15 U.S.C.

§1681m(b).

81.     The failure to provide such notices was willful or negligent.

**WHEREFORE**, plaintiff requests that this court enter judgment for her against Empire

Hyundai, Inc., for the following relief:

a.     Actual or statutory damages pursuant to 15 U.S.C. §1681n, or in the alternative,

actual damages pursuant to 15 U.S.C. §1681o;

b.     Punitive damages pursuant to 15 U.S.C. §1681n;

c.     Attorney's fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681n or

§1681o;

d.     Such other or further relief as the court deems appropriate.

### FOURTH CAUSE OF ACTION:  FAIR CREDIT REPORTING ACT
### (CLAIM AGAINST  HYUNDAI CAPITAL AMERICA)

82.     Defendant, Hyundai Capital America, Inc., at all relevant times was a  user of credit

reports within the meaning of the Fair Credit Reporting Act.

83.     HCAI took adverse action, as defined at 15 U.S.C. §1681a(k), in connection with

the plaintiff's credit application, based in whole or in part on information contained in a consumer

credit report.

84.     HCAI failed to give notice to plaintiff as required by 15 U.S.C. §1681m(a).

85.     HCAI obtained information from a source other than a credit reporting agency that

resulted in an adverse determination on the plaintiff's application for consumer credit.

86.     HCAI failed to give notice to plaintiff as required by 15 U.S.C. §1681m(b).

87.     The failure to provide such notices was willful or negligent.

**WHEREFORE**, plaintiff requests that this court enter judgment for her against Hyundai Capital America, Inc.,  for the following relief:

a.      Actual or statutory damages pursuant to 15 U.S.C.  §1681n, or in the alternative, actual damages pursuant to 15 U.S.C. §1681o;

b.      Punitive damages pursuant to 15 U.S.C. §1681n;

c.      Attorney's fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681n or §1681o;

d.      Such other or further relief as the court deems appropriate.

## FIFTH CAUSE OF ACTION: BREACH OF CONTRACT
## (CLAIM AGAINST EMPIRE HYUNDAI)

88.     On September 27, 2008, the plaintiff and Empire executed a contract for the purchase and installment sale of the Taurus.

89.     Said contract was not subject to any condition precedent or condition subsequent based on Empire's ability to assign the contract or the terms on which it might be able to assign the contract.

90.     From September 27 to October 1, 2008, the plaintiff performed her obligations under the said contract.

91.     On or about October 1, 2008, defendant Empire told the plaintiff that it could not obtain financing for her and that she must therefore surrender the Taurus.

92.     In so doing, defendant Empire breached the said contract.

**WHEREFORE**, plaintiff requests that this court enter judgment for her against Empire Hyundai, Inc., for her actual and consequential damages and for such other or further relief

as the court deems appropriate.

## SIXTH CAUSE OF ACTION: CONVERSION
## (CLAIM AGAINST EMPIRE HYUNDAI)

93.     On September 27, 2008, the plaintiff delivered her Explorer vehicle and assigned title to the same to Empire.

94.     Said delivery and transfer was for the purpose of applying the value of the Explorer toward the purchase of the Taurus, and was conditioned on the completion of that transaction.

95.     When Empire terminated the Taurus transaction, it failed and refused to return the plaintiff's Explorer.

96.     This refusal was intentional.

**WHEREFORE**, plaintiff requests that this court enter judgment for her against Empire Hyundai, Inc., for her damages, including loss of use, inconvenience, anxiety, and emotional distress, and for such other or further relief as the court deems appropriate.

## SEVENTH CAUSE OF ACTION: BREACH OF CONTRACT
## (CLAIM AGAINST ALL DEFENDANTS)

97.     On or about October 2, 2008, plaintiff entered into a contract for extended service of the Accent,  which was contract #NSA8 360199.

98.     The administrator of the contract was First Extended Service Corp.

99.     Empire Hyundai was the Selling Dealer and the agent of First Extended for purposes of selling the said contract.

100.    On or about March 31, 2009, plaintiff followed the directions contained in the contract to effectuate cancellation of the contract and receive a refund of $1,375.

101.    Defendants First Extended and Empire Hyundai refused to cancel the coverage.

102.    Plaintiff has been damaged by continuing to pay for specious "extended service"

which duplicates the existing manufacturer's warranty and/or her personal insurance coverage, and which is financed at an Annual Percentage Rate of 11.15% over six years.

103.    Defendant Hyundai Capital America is subject to this claim pursuant to the preservation of claims language in the contract assigned to it.

**WHEREFORE**, plaintiff requests that this court enter judgment for her against all defendants, jointly and severally, for her actual and consequential damages and for such other or further relief as the court deems appropriate.

## EIGHTH CAUSE OF ACTION: CONSUMER PROTECTION ACT, M.G.L. c.93A (CLAIM AGAINST RESOURCE AUTOMOTIVE, INC.)

104.    First Extended was in the business of selling and administering motor vehicle warranties and/or service contracts to consumers.

105.    The refusal by First Extended to honor the plaintiff's request to cancel the contract according to its terms was an unfair and/or deceptive act on the part of Resource Automotive, Inc., d/b/a First Extended.

106.    On June 3, 2009, the plaintiff, by her attorney, sent First Extended, by certified mail, return receipt requested, a written demand for relief pursuant to M.G.L. c. 93A, §9, identifying the claimant and reasonably describing the unfair acts or practices relied upon and the injuries suffered.

107.    To date, First Extended has not responded and thereby has refused to make a reasonable offer of relief to the plaintiff.

108.    The refusal to grant relief was made in bad faith with knowledge or reason to know that the acts of First Extended violated M.G.L. c. 93A, §2.

**WHEREFORE**, plaintiff requests that this court enter judgment for her against Resource

Automotive, Inc., for the following relief:

a.     Actual damages in an amount determined by the court;

b.     Treble damages as provided by M.G.L. c. 93A, §9(3);

c.     Attorney's fees, litigation expenses and costs; and

d.     Such other or further relief as the court deems appropriate.

## NINTH CAUSE OF ACTION: CONSUMER PROTECTION ACT, M.G.L. c.93A (CLAIM AGAINST EMPIRE AND HCAI)

109.   Throughout its dealings with the plaintiff, Empire engaged in numerous unfair and/or deceptive acts and practices in violation of M.G.L. c. 93A, §2, including but not necessarily limited to:

(i)     Empire advertised that the plaintiff was guaranteed to have her credit approved, but failed to approve her credit to purchase the Taurus, in violation 940 C.M.R. 3.05(1).

(ii)    Empire advertised that the plaintiff was guaranteed to have her credit approved, but failed to approve her credit to purchase the Accent,  in violation of 940 C.M.R. 3.05(1).

(iii)   Empire entered into a contract for the sale of the Taurus with no intention to perform its obligations thereunder -- intending, rather, to force the plaintiff to enter into a more lucrative contract for a new Accent.

(iv)    Empire represented that the contract for the Taurus was terminable at its will or was conditional on Empire's ability to assign it on favorable terms to a lender, which representations were false, in violation of 940 C.M.R. 3.05(1).

(v)     Empire failed to refund the full amount of the plaintiff's deposit promptly upon its

decision not to accept the Taurus contract, in violation of 940 C.M.R. 5.04(9).

(vi)     Empire falsely represented to the plaintiff that her trade-in had been sold or for some other reason could not be returned to her upon the cancellation of the Taurus sale.

(vii)    Empire failed to execute a warranty of title for the Taurus and deliver same to the Registry of Motor Vehicles, the plaintiff, or the secured party on the day it delivered the Taurus to the plaintiff, in violation of 940 C.M.R. 5.04(11).

(viii)   Empire made false representations to induce HMFC to purchase the RISA for the Accent, namely, that the Accent would be owned and driven by Nicole and garaged in Braintree, to the detriment of both the plaintiff and her daughter Nicole.

(ix)     Empire sold the plaintiff an extended service contract whose benefits to the plaintiff were illusory and failed to disclose its own profit from the sale of said extended service contract.

(x)      Empire refused to obey the plaintiff's instruction to cancel the extended service contract.

110.    The foregoing acts and practices were willful and knowing.

111.    On June 3, 2009, the plaintiff, by counsel, sent Empire Hyundai, by certified mail, return receipt requested, a written demand for relief pursuant to M.G.L. c. 93A, §9, identifying the claimant and reasonably describing the unfair acts or practices relied upon and the injuries suffered.

112.    On June 30, 2009 Empire, through its attorney, sent a response to the plaintiff's demand letter, in which it failed and refused to make a reasonable offer of relief.

113.    The refusal to grant relief was made in bad faith with knowledge or reason to know that the acts of Empire Hyundai violated M.G.L. c. 93A, §2.

114.   Defendant Hyundai Capital America is subject to these claims pursuant to the preservation of claims language in the contract assigned to it.

**WHEREFORE**, the plaintiff, Sharon Gagne-Smith, requests that this court enter judgment for her against Empire Hyundai, Inc., and Hyundai Capital America, Inc., jointly and severally, for the following relief:

a.   Actual damages in an amount determined by the court;

b.   Treble damages as provided by M.G.L. c. 93A, §9(3);

c.   Attorney's fees, litigation expenses and costs; and

d.   Such other or further relief as the court deems appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on First through Seventh Causes of Action.  Plaintiff requests trial by jury on Eighth and Ninth Causes of Action.

Respectfully submitted,

*/s/ Deborah G. Roher*
Deborah G. Roher, BBO #552047
Attorney for Plaintiff
56 N. Main Street, #413
Fall River, MA  02722
(508) 672-1383 phone
(508) 672-1084 fax

August 20, 2009